**REVISED DECEMBER 14, 2001**
**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-20988

_____

AMERICAN NATIONAL GENERAL INSURANCE COMPANY;
AMERICAN NATIONAL PROPERTY AND CASUALTY
COMPANY,

Plaintiffs - Appellees,

v.

STEPHEN R. RYAN; ET AL.

Defendants,

LINDA ISBELL, Individually, and as next friend of Jordan Isbell and
Kaitlyn Isbell

Defendant - Appellant

LINDA ISBELL, Individually, and As Next Friend of Jordan Isbell
and Kaitlyn Isbell

Plaintiff - Appellant

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY
COMPANY; ET AL.

Defendants

AMERICAN NATIONAL PROPERTY AND CASUALTY
COMPANY; AMERICAN NATIONAL GENERAL INSURANCE
COMPANY

Defendants - Appellees

---

Appeal from the United States District Court
For the Southern District of Texas, Houston

---

December 12, 2001

Before KING, Chief Judge, and JOLLY and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Linda Isbell, individually and as next friend of Jordan Isbell and Kaitlyn Isbell, Stephen Ryan, and Charlotte Ryan appeal the district court's grant of summary judgment to American National Property and Casualty Company ("ANPAC") and American National General Insurance Company ("ANGIC") (collectively, "American National"). The issue is whether a homeowner's policy provides coverage for a lawsuit seeking damages caused by a parent's negligent failure to warn of her minor son's propensity to commit acts of sexual molestation against other minor children. Because we conclude the facts alleged in the negligence action do not constitute an occurrence as defined by the homeowner's policy, we AFFIRM.

**I**

The facts in this case are essentially undisputed. MFI is the son of Charlotte Ryan and her first husband, Michael G. Isbell. MFI lived with his mother and her second husband, Stephen Ryan, during most of the year, but regularly visited and spent a part of each summer with his father, Michael

Isbell, his second wife, Linda Isbell, and their two minor daughters. In 1995, MFI stayed with the Isbells for part of the summer. In June 1995, the Isbell daughters told their mother that their half-brother had repeatedly sexually molested and abused them. The Isbells reported the incidents to the appropriate authorities, and MFI was charged with two counts of aggravated sexual assault. The court found that MFI committed the charged conduct.

Linda Isbell, individually and as next friend of her two minor daughters, filed suit in state court against Charlotte Ryan, individually and as next friend of her minor son MFI. In her petition, Linda Isbell alleged that Charlotte Ryan breached her duty to warn the Isbells of MFI's propensity to molest children. Specifically, she alleged that Charlotte Ryan was aware of MFI's proclivities from an investigation of MFI conducted by Child Protective Services (CPS) after MFI was accused of sexually molesting a male cousin in 1993-1994. CPS found good cause to believe the sexual and physical abuse had occurred, referred the Ryans to appropriate services, and obtained an agreement from the alleged victim's mother not to allow MFI access to his cousin. According to Linda Isbell, Charlotte Ryan did not convey to the Isbells the result of the CPS investigation, did not apprize them of other accusations against MFI of sexual impropriety, did not warn of MFI's proclivities for sexual improprieties with other children, and did not warn that MFI was a danger to minor children.[1]

At the time the events alleged in Linda Isbell's negligence action took place, Charlotte and Stephen Ryan were insured by a Texas Standard Homeowner's Policy ("the Policy") issued by ANGIC.[2] ANGIC filed a declaratory judgment action in federal court against Stephen and Charlotte

---

[1]The state court has abated Linda Isbell's negligence action by joint motion and court order pending the resolution of this appeal.

[2]The Ryans had two Texas Standard Homeowner's Policies with ANGIC. The first policy was effective February 28, 1994 to February 28, 1995; the second was a renewal policy effective

Ryan seeking a declaration that it had no duty to defend the Ryans in the state court action under the Policy, nor any obligation to pay or indemnify them for any damages recovered by Linda Isbell. Thereafter, Linda Isbell instituted a declaratory judgment action in state court against ANGIC and ANPAC for a declaration of her rights with respect to the Ryans' Policy. Linda Isbell's action was removed to federal court, and by agreement of the parties, consolidated with ANGIC's action. The parties agreed to realign themselves in the consolidated action, with ANGIC and ANPAC as plaintiffs and Linda Isbell and the Ryans as defendants.

In the consolidated action, the parties cross-moved for summary judgment. The district court granted ANGIC's and ANPAC's motion for summary judgment and denied Linda Isbell's and the Ryans' motion. The district court issued a memorandum and opinion holding that the facts alleged in Linda Isbell's negligence action against Charlotte Ryan did not constitute an "occurrence" as required by the Policy as a prerequisite to coverage. Alternatively, the district court held the sexual molestation committed by MFI to be excluded under the Policy's intentional acts exclusion. As a result, the district court held that neither ANGIC nor ANPAC had a duty to defend nor any obligation to pay or indemnify the Ryans under the Policy. Linda Isbell and the Ryans now appeal.

**II**

We review a district court's grant of summary judgment de novo. *McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001). The district court's interpretation of an insurance contract is a question of law that we also review de novo. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins.*, 99 F.3d 695, 700 (5th Cir. 1996). We will affirm a district court's grant of summary judgment when, viewing the evidence

February 28, 1995 to February 28, 1996. There are no material differences between the two policies.

-4-

in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Texas rules of contract interpretation control in this diversity case. *Bailey*, 133 F.3d at 369. Under Texas law, the same rules apply to the interpretation of insurance contracts as apply to the interpretation of other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767-68 (5th Cir. 1995) (citing *Barnett v. Aetna Life Ins. Co.* 723 S.W.2d 663, 665 (Tex. 1987)). A court's primary concern is to give effect to the intentions of the parties as expressed by the policy language. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983). The terms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). "Ambiguous insurance contracts will be interpreted against the insurer." *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 929 (5th Cir. 1995) (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.* 811 S.W.2d 552, 555 (Tex. 1991)). "The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation." *Blaylock v. Am. Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex. 1982).

## A

Linda Isbell and the Ryans contend that American National has a duty to defend and potentially a duty to indemnify Charlotte Ryan in Linda Isbell's state action against her. Under Texas law, the duty to defend and the duty to indemnify are separate and distinct obligations. *Am. Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.–Dallas 1990, writ dism'd). The duty

-5-

to defend is broader than the duty to indemnify; if the insurer does not have a duty to defend the insured, then the insurer also does not have a duty to indemnify. *See Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 687 (Tex. Civ. App.–Austin 1980, writ ref'd n.r.e.) ("[A]ppellee had no duty to defend appellant, and, in turn, appellant has no right to indemnification."). Thus, we address American National's duty to defend first.

We determine an insurer's duty to defend from the factual allegations of the plaintiff's petition in the underlying action. *Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). Using Texas's "eight corners rule," we look to the four corners of the policy and the four corners of the complaint to determine whether there is a duty to defend. *Bailey*, 133 F.3d at 369; *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). An insurer is required to defend in any case in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than the legal theories alleged." *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141 (quoting *Merchs. Fast Motor Lines, Inc. v. Nat'l Union Fire Ins. Co.,* 919 S.W.2d 903, 905 (Tex. App.–Eastland 1996, writ granted)); *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.–Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct."); *Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex. App.–Dallas 1992, n.w.h.) ("If the petition only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case."). "The insured bears the burden of showing that the claim against him is potentially within his

policy's coverage." *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).

By the terms of the Ryans' Policy, in order for coverage to exist and American National to have a duty to defend, the underlying action must allege damages caused by an "occurrence." The Policy provides liability coverage, in relevant part, as follows:

> Coverage C (Personal Liability)
> If a claim is made or suit is brought against an <u>insured</u> for damages for <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, we will: (1) Pay up to our limit of liability for damages for which the <u>insured</u> is legally liable; (2) Provide a defense at our own expense by co unsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

The Policy defines an "occurrence" as "an accident, including exposure to conditions which result in bodily injury or property damage during the policy." Although the Policy does not define the term "accident," Texas case law defines it as "an unexpected happening without intention or design." *Allen v. Auto. Ins. Co.*, 892 S.W.2d 198, 199 (Tex. App.–Houston [14th Dist.] 1994, no writ).

Linda Isbell and the Ryans do not dispute that MFI's sexual molestation of the Isbell daughters was intentional and thus not an accident. They concede that, from the standpoint of MFI, it did not constitute an occurrence within the meaning given by the Policy. They contend instead that Charlotte Ryan's negligent acts causing the Isbell daughters' injuries must be considered separately from MFI's intentional acts.

To support this claim, Linda Isbell and the Ryans focus on the significance of the Policy's severability clause. The Policy's severability clause reads: "This insurance applies separately to each <u>insured</u>." Linda Isbell and the Ryans argue that the severability clause modifies the definition of occurrence so that the determination of whether an event constitutes an "occurrence" must be made

from the perspective of the insured being sued.[3] Because MFI's acts were "unexpected and without design" from the standpoint of Charlotte Ryan, they argue that they satisfy the threshold requirement of an "occurrence" for coverage purposes. Thus, they conclude, Coverage C of the Policy obligates American National to defend Charlotte Ryan in Linda Isbell's negligence action.

We have held that, under Texas law, "where a third-party's liability is related to and interdependent on other tortious activities, the ultimate issue [in determining coverage] is whether the underlying tortious activities are encompassed within the definition of 'occurrence.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 371 (5th Cir. 1998); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 87 (5th Cir. 1997); *NY Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 340 (5th Cir. 1996). "An insurer has no duty to defend or to indemnify its insureds against claims that could not be brought absent the underlying and excluded tortious conduct." *Bailey*, 133 F.3d at 371 (no duty to defend church and its associate ministers for negligence claims arising from the sexual misconduct of a pastor); *Cornhill*, 106 F.3d at 87 (no duty to defend employer for negligent hiring and failure to provide safe workplace where employee sexually harassed another employee); *NY Life Ins. Co.*, 92 F.3d at 340 (no duty to defend employer for negligent hiring, training, and supervision of employee who allegedly defrauded a client). Here, we find no way to separate Charlotte Ryan's liability for negligent failure to warn from MFI's sexual molestation. If MFI had not sexually molested the Isbell daughters, Linda Isbell would have no claim for damages against Charlotte Ryan. Thus, we find

---

[3]Linda Isbell and the Ryans suggested for the first time at oral argument that Charlotte Ryan's negligence could itself be considered a separate "occurrence," even in the absence of a severability clause. In other words, her "accident" in failing to warn the Isbells caused the injury. They have waived this argument. *See Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794 (5th Cir. 1994) ("We liberally construe briefs in determining issues presented for review; however, issues not raised at all are waived."). Even if we were to consider their argument, we are not persuaded by this characterization for the reasons set forth below.

Charlotte Ryan's liability to be "related to and interdependent on" the tortious acts of MFI. Because MFI's underlying acts are not encompassed within the definition of occurrence, under the rule stated in *Bailey*, *Cornhill*, and *New York Life*, American National has no duty to defend.

**B**

Linda Isbell and the Ryans contend that even if these cases correctly state Texas law, the severability clause in the Ryans' Policy changes the result in this case. They rely mainly on three cases interpreting Texas law to support this view. We are not persuaded, however, that any of these cases control the outcome of this case.

First, Linda Isbell and the Ryans state that the holding in *Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714 (Tex. 1970) supports their interpretation of the Policy's severability clause and its effect on the Policy's provisions. In that case, the Texas Supreme Court confronted a similar "severability of interests" clause providing that the term "the insured" was used severally in the insurance contract. The issue in *Commercial Standard* was the effect of the severability clause on the applicability of policy provisions excluding coverage under certain circumstances. Whether or not the exclusions applied depended on the identity of "the insured" for purposes of the provisions at issue. *Id.* at 721. The court found significant the fact that the exclusions all referred to "the insured" as opposed to "an insured." "When a claim is made against one who is an 'insured' under the policy, [that person is considered] 'the insured' for the purpose of determining the [insurance] company's obligations with respect to [that] claim." *Id.* Thus, the court concluded that the fact that a claim against one insured might fall within one of the policy's exclusions would not preclude coverage of a claim against another insured.

*Commercial Standard* is distinguishable from the case now before us. In this case, we must

determine the effect of the severability clause, if any, on the definition of an "occurrence" under the Policy. Unlike the exclusion at issue in *Commercial Standard*, which was defined with respect to "the insured," an occurrence is defined in the Ryans' Policy with respect to an event. The definition of occurrence does not contain any language referencing "the insured" to which the severability clause can be linked. Instead, it simply defines a set of facts, namely, an accident. As a result, Linda Isbell's and the Ryans' reliance on *Commercial Standard* is misplaced.

Second, Linda Isbell and the Ryans rely on our decision in *Western Heritage Insurance Co. v. Magic Years Learning Centers & Child Care, Inc.*, 45 F.3d 85 (5th Cir. 1995). *Magic Years* is similarly distinguishable from this case. In *Magic Years*, a former employee sued Magic Years and two of its officers for sexual harassment by the president of the company. The plaintiff alleged that not only did the president intentionally and negligently harass her, but that Magic Years was responsible under the doctrine of respondeat superior and for entrusting him with supervisory responsibility. Although we found that the sexual harassment was covered under Magic Years's policy, we did not base this finding on the policy's severability clause. Instead, we relied on a special endorsement in the policy providing coverage for sexual harassment claims to trump the general policy definition for occurrence. There is no such special endorsement in the Ryans' Policy.

Linda Isbell and the Ryans acknowledge this difference between Magic Years's policy and the Ryans' Policy. Still, they argue that our alternative holding in *Magic Years* that the sexual harassment would fall within the definition of occurrence even in the absence of the special endorsement should control the outcome of this case. We are not persuaded that this point in *Magic Years* should be accorded such weight. We have repeatedly criticized and declined to follow this aspect of *Magic Years* as unexplained and inconsistent with Texas precedent. *See N.Y. Life Ins. Co. v. Travelers Ins.*

-10-

*Co.*, 92 F.3d 336, 340 n.4 (5ᵗʰ Cir. 1996) (declining to follow the "alternative holding" in *Magic Years* because it failed to acknowledge, and was inconsistent with, our earlier holding in *Columbia Mutual Insurance Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124 (5ᵗʰ Cir. 1993)); *Am. Guar. & Liab. Ins. Co. v. The 1906 Co.*, 129 F.3d 802, 810 (5ᵗʰ Cir. 1997) (same). Texas courts have also declined to follow *Magic Years* for the same reason. *See King v. Dallas Fire Ins. Co.*, 27 S.W.3d 117,125 (Tex. App.–Houston [1ˢᵗ Dist.] 2000, rev. granted) (declining to follow *Magic Years* for reasons stated in *New York Life*).

Finally, Linda Isbell and the Ryans suggest that the Texas Court of Appeals decision in *Walker v. Lumbermen's Mutual Casualty Co.*, 491 S.W.2d 696 (Tex. Civ. App.–Eastland 1973, no writ), supports their viewpoint-based interpretation of occurrence. They read *Walker* to stand for the proposition that an insured's minor child's intentional acts do not preclude coverage for the insured's vicarious liability. This characterization of *Walker*, however, is not wholly accurate. Coverage in *Walker* did not turn on a determination of whether the child's intentional destruction of property constituted an occurrence. The policy in *Walker* clearly provided coverage for all sums for which "the Insured shall become legally obligated to pay" as well as for "loss of property of others caused by an Insured." *Id.* at 697. The issue in *Walker* instead was whether the child's acts fell within an exclusion to coverage. As in *Commercial Standard*, the exclusion for intentional acts in *Walker* was defined with respect to damage caused by "the Insured" rather than an event. Thus, *Walker* does not control our construction of occurrence under the Ryans' Policy.

While none of these cases addressed the significance of a severability clause for determining whether a complaint alleges an occurrence, two recent Texas Court of Appeals cases have reached this issue. In *King v. Dallas Fire Insurance Co.*, the sole issue on appeal was whether Dallas Fire

-11-

had a duty to defend King in a personal injury suit arising from an assault committed by one of King's employees. 27 S.W.3d at 117. The underlying petition alleged that King was liable for damages resulting from the assault under the doctrine of respondeat superior and for "negligent hiring, training, and supervision." One question faced by the court was whether the negligence claims asserted against King were based on an occurrence. King proffered two arguments on appeal that they were. First, King argued that the allegations of his negligence in hiring, training, and supervising constituted an occurrence separate and distinct from the alleged intentional conduct of his employee. *Id.* at 123. The court rejected this argument on the ground that the claim was "related to and interdependent on" the assault claim, and thus could not be considered an occurrence under Texas law. *Id.* at 123, 127. Second, King argued that even if the negligence claims against him ordinarily would not be covered under the general rule, the policy's "Separation of Insureds" provision changed that result. *Id.* at 127. Under the Separation of Insureds provision, King argued, the policy applied separately "to each insured against whom a claim is made." Thus, King contended, because he clearly did not intend or reasonably anticipate that his employee would assault the plaintiff, the negligence claims against him alleged an accident or occurrence. *Id.* The Texas Court of Appeals disagreed. After reviewing Texas case law, including several Fifth Circuit cases applying Texas law, the court held that plaintiff's allegations "in effect charge[d] King with creating the circumstances that produced [his employee's] intentional act." *Id.* at 129. As a result, the intentional conduct should be imputed to King, notwithstanding the language of the separability clause. *Id.*

Another division of the Texas Court of Appeals applied similar reasoning a few months later in *Folsom Investment, Inc. v. American Motorists Insurance* Co., 26 S.W.3d 556 (Tex. App.–Dallas 2000, no pet.). In *Folsom*, the issue before the court was whether allegations that Folsom negligently

hired, trained, supervised, and retained an employee who sexually harassed a co-worker constituted an occurrence. Like Linda Isbell and the Ryans, Folsom argued that the severability of insureds clause in his general liability policy meant that the court should determine whether his negligence constituted an occurrence without reference to his employee's tortious conduct. Folsom also cited to *Commercial Standard* and *Walker* as support for this contention. The Texas Court of Appeals declined Folsom's invitation to extend the applicability of the severability clause in that manner. Instead, the court held that, because the negligence claims against Folsom were "related to and dependent on" the intentional misconduct of his employee, they did not allege an occurrence. *Id.* at 561 (citing *Bailey*, 133 F.3d at 371). This approach, the court noted, was not only consistent with Fifth Circuit cases interpreting Texas law, but also with Texas's well-settled rule requiring "courts to focus on the factual allegations in the pleadings, rather than on the legal theories asserted, in determining an insurer's duty to defend." *Id.*

Although *King* and *Folsom* both involved an employer's liability coverage with respect to the intentional torts of an employee, we find their reasoning applicable to this case. Like Folsom and King, Charlotte Ryan faces a claim for damages caused by the intentional tort of another as a result of her own negligence with respect to the tort's commission. In the absence of MFI's molestation of the Isbell daughters, there would be no claim against Charlotte Ryan. We find no principled reason for affording the severability clause in the Ryans' Policy greater effect than the severability clauses at issue in *King* and *Folsom* simply because this case does not involve an employer and an employee.

Linda Isbell and the Ryans urge us to depart from *King*, *Folsom*, and the Fifth Circuit cases upon which they rely, because those cases misstate Texas law. They contend that, in the absence of clear precedent from the Texas Supreme Court, we should rely on *Agoado Realty Corp. v. United*

-13-

*Int'l Ins. Co.*, 733 N.E.2d 213 (N.Y. 2000), a recent New York Court of Appeals decision construing the term "occurrence" in an insurance policy. At issue in *Agoado* was whether the intentional assault of a tenant by an unknown assailant constituted an accident and thus an "occurrence" under a landlord's insurance policy. *Id.* at 214. The New York Court of Appeals held that even in the absence of a severability clause, the determination of whether a loss is the result of an accident must be made from the point of view of the insured. *Id.* at 215.

We do not find *Agoado* persuasive in this case. Under the *Erie* doctrine, we are bound in diversity cases to apply the substantive law of the forum state as interpreted by the state's highest court. *Ladue v. Chevron U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir. 1991). Where the state's highest court has not yet spoken on an issue, we may look to the state's appellate courts for guidance. *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179, 183, 85 L.Ed. 139 (1940) (stating that a decision by an intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise); *Tex. Dep't of Hous. & Cmty. Affairs*, 68 F.3d at 928 (same). Here, we find *King* and *Folsom* to be consistent with Texas precedent and probative of how the Texas Supreme Court would decide the issue in this case. As a result, we will not depart from their holdings.

## C

Finally, Linda Isbell and the Ryans argue that the Policy's definition of occurrence is at the very least ambiguous, and thus should be read in favor of coverage. Specifically, they argue that by interpreting the threshold requirement of an occurrence to exclude claims related to and interdependent on the intentional conduct of others, we render the Policy's intentional acts exclusion and the severability clause void. As the Ryans' Policy was originally issued, the intentional acts

-14-

exclusion excluded from coverage "bodily injury . . . which is caused intentionally by or at the direction of an insured."  The exclusion later was reformed by the parties in accordance with a Texas State Board of Insurance amendment to read "*the* insured" rather than "*an* insured."  Linda Isbell and the Ryans argue that this reformed clause, in light of the severability clause, only excludes coverage for the intentional acts of the individual insured being sued.  Thus, they argue, the intentional acts exclusion as reformed would be meaningless because claims arising from intentional conduct, and in particular from the intentional conduct of others, would already be excluded under the definition of occurrence.

The determination of whether an ambiguity exists in a contract is a question of law. *Canutillo*, 99 F.3d at 700.  A contract is ambiguous if it is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  In light of the case law discussed above and the plain wording of the provision, we do not find the Policy's definition of an occurrence susceptible to multiple meanings.  Although we recognize the possible overlap of the intentional acts exclusion and the threshold requirement of an occurrence, we may not vary the unambiguous terms of the Policy. *See id.* at 700 ("When the terms of an insurance policy are clear and unambiguous a court may not vary those terms.").[4]

---

[4]Linda Isbell and the Ryans also appeal the district court's alternative finding that the intentional acts exclusion would preclude a duty to defend in the negligence action against Charlotte Ryan.  Because we find that the negligence claim against Charlotte Ryan does not allege an occurrence within the meaning given by the Policy, we do not reach this issue.  We also do not address American National's argument that public policy prohibits a finding of an occurrence resulting from sexual molestation of minors for the same reason.

-15-

**III**

For the foregoing reasons, we AFFIRM the district court's judgment.[5]

---

[5]We deny Linda Isbell's motion to certify question to the Texas Supreme Court.