Olaf HARRIS, as Next Friend of O'Belle Harris, Plaintiff,

v.

TRANSAMERICA LIFE INSURANCE COMPANY, Defendant.

Civil Action No. W–06–CA–196.

United States District Court, W.D. Texas, Waco Division.

March 19, 2007.

Jeffrey J. Wolf of Wolf & Law, PC, Counsel for Transamerica Life Insurance Company.

Christopher A. Thompson and Crystal L. Worthen of Jackson Walker, L.L.P., counsel for Plaintiff.

### MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, JR., Chief Judge.

Before the Court are Plaintiff's Motion for Partial Summary Judgment, Defendant's Cross–Motion for Summary Judgment, and responses and replies to both

motions. Having reviewed the motions, responses, replies, and the applicable legal authority, the Court finds that Plaintiff's Motion should be denied and that Defendant's Cross–Motion for Summary Judgment should be granted in part and denied in part.

### I. PROCEDURAL HISTORY

On June 14, 2006, Olaf Harris, as next friend of O'Belle Polete [1] ("Plaintiff") filed suit against Transamerica Life Insurance Company ("Defendant") in the 220th District Court of Bosque County, Texas. In her petition, Plaintiff asserts four causes of action: (1) breach of an insurance contract, (2) violations of the Texas Deceptive Trade Practices Act (DTPA), (3) common law fraud, and (4) violations of chapter 451 of the Texas Insurance Code. Plaintiff's Original Petition at 4–6. All four causes of action relate to the Defendant's refusal to pay convalescent care benefits to Plaintiff pursuant to a Convalescent Care Policy issued by Defendant. *Id.* at 2–3.

On July 14, 2006, Defendant timely removed the case to this Court. Notice of Removal at 1, 4. Defendant then filed its Original Answer on July 18, 2006. Defendant Transamerica Life Insurance Company's Original Answer at 1, 6. On December 22, 2006, Plaintiff filed her Motion for Partial Summary Judgment ("Plaintiff's Motion"). Defendant thereafter moved on December 27, 2006 for an extension of time to respond to Plaintiff's Motion. Defendant's Unopposed Motion for Extension of Time to File Response to Plaintiff's Motion for Partial Summary Judgment at 1, 3. The Court granted the

---

1. The original state court petition was styled "Olaf Harris, as Next Friend of O'Belle *Harris v. Transamerica Life Insurance Company.*" Plaintiff's Original Petition at 1 (emphasis added). After removal of the suit to federal court, the parties stipulated that Olaf Harris was bringing the action as next friend of O'Belle *Polete.* Stipulation at 1. The parties further stipulated that "any judgments or orders entered in this action shall be binding against or in favor of Olaf Harris, as next friend of O'Belle Polete" and that "all [future] pleadings, motions, and other documents filed with the Court ... will reflect the correct name of the plaintiff as Olaf Harris, as Next friend of O'Belle Polete." *Id.* at 1–2.

Defendant's motion on December 28, 2006, making Defendant's response due no later than January 19, 2007 at 11:59 p.m. Order Granting Defendant's Unopposed Motion for Extension of Time (n.p.). On January 19, 2007. Defendant filed its Cross–Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Motion"), with accompanying Appendix in Support of Its Cross–Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Appendix"). Plaintiff filed her Response to Defendant's Cross–Motion for Summary Judgment and Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Response and Reply") on January 30, 2007. On February 7, 2007, Defendant filed its Reply to Plaintiff's Response to Its Cross–Motion for Summary Judgment ("Defendant's Reply").

## II. UNDISPUTED FACTS

Harry Polete ("Polete") purchased an insurance policy ("Policy") from Defendant[2] in April 1989. Plaintiff's Motion at 3 ¶ 4, app. at 22, 49; Defendant's Motion at 3 ¶ 1; Defendant's Appendix at 19. Polete is the named insured and his spouse, Plaintiff, is a covered dependent. Plaintiff's Motion app. at 22; Defendant's Appendix at 19. The Policy provides, *inter alia*, that Defendant will pay $1500 per month to Plaintiff as a "Convalescent Care Benefit" while Plaintiff is confined in a "Convalescent Care Facility." Plaintiff's

Motion at 3 ¶ 4, app. at 22, 27–28; Defendant's Motion at 3–4 ¶ 2; Defendant's Appendix at 19, 25. The Policy further provides that the Convalescent Care Benefit will continue as long as Plaintiff is confined until a certain maximum benefit period has elapsed. Plaintiff's Motion at 3 ¶ 4, app. at 22, 27–28; Defendant's Motion at 3–4 ¶ 2; Defendant's Appendix at 19, 25. On September 16, 2001, Plaintiff began receiving convalescent care at a nursing home that qualified as a Convalescent Care Facility under the Policy. Plaintiff's Motion app. at 50. Plaintiff submitted claims to Defendant, and Defendant paid benefits due under the Policy to Plaintiff until December 23, 2005, when the Defendant discontinued the payment of benefits. *Id.* Defendant did not discontinue benefit payments because of non-payment of premiums by Plaintiff; indeed, all premiums due under the policy were paid from April 1989 until December 2005. *Id.* Instead, Defendant claims that it was only obligated to pay benefits to Plaintiff for a total of four years. *Id.* app. at 51; Defendant's Motion at 1. Plaintiff, to the contrary, claims that Defendant was obligated to pay benefits to Plaintiff for a total of eight years. Plaintiff's Motion at 2. At the time that Defendant halted benefit payments, it had paid a total of 48 months (four years) of benefits to Plaintiff.[3] Plaintiff's Motion app. at 50.

## III. STANDARDS OF REVIEW

### A. Summary Judgment

A movant seeking summary judgment must inform the court of the basis of his

---

**2.** The policy was actually purchased from NN Investors Life Insurance Company ("NN Investors"). Plaintiff's Motion app. at 19. Since the policy was issued, NN Investors has changed its company name twice. First, it became PFL Life Insurance Company ("PFL"). Defendant's Appendix at 38–39. Later, PFL changed its name to Transamerica Life Insurance Company, the name Defendant uses. Defendant's Motion at 3 ¶ 1.

**3.** Plaintiff was not confined to the nursing home for the entire period of time between September 16, 2001 and December 23, 2007. *See* Plaintiff's Motion at 3 n. 2. It is uncontested, though, that Plaintiff never left the nursing home for a period of six months or more after September 16, 2001.

motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548. However, " '[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). If it is evident that the party seeking summary judgment against one who bears the burden of proof has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot*, 780 F.2d at 1195. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e): *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir.1988).

### B. Principles of Contract/Insurance Policy Interpretation

In a suit based on diversity of citizenship jurisdiction, Texas law governs the interpretation of contracts. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir.2001); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Texas courts apply the same rules of interpretation and construction to insur-

ance contracts as they do to other contracts. *Ryan,* 274 F.3d at 323 (citing *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994)); *Lynch Props.,* 140 F.3d at 625 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). The Court's primary concern in interpreting an insurance policy is to "effectuat[e] the true intent of the parties as expressed in the insurance policy." *Lynch Props.,* 140 F.3d at 625–26 (citing *Forbau,* 876 S.W.2d at 133). Those constructions that "give effect to each term" and do not "render[ ] any term a nullity" are favored. *Id.* at 626 (citing *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1238 (5th Cir.1986)). The Court, though, should not isolate any phrase, sentence, or section of a contract and consider it separate and apart from the other provisions of the contract. *Id.* at 626 (citing *Forbau,* 876 S.W.2d at 132–33); *see also Nat'l Union Fire Ins.,* 907 S.W.2d at 520 (stating that the court is to look "at the contract as a whole in light of the circumstances present when the contract was entered"). "[T]erms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Ryan,* 274 F.3d at 323 (citing *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984)).

■ The Court may not look at the parties' interpretation or admit extraneous evidence to determine the true meaning of the contract unless and until the contract is first determined to be ambiguous. *Nat'l Union Fire Ins.,* 907 S.W.2d at 520. An insurance contract is not ambiguous "[i]f the provisions of the insurance contract can be given a 'definite or certain legal meaning.'" *Lynch Props.,* 140 F.3d at 626 (citing *Nat'l Union Fire Ins.,* 907 S.W.2d at 520). The contract is likewise not am-

biguous merely because the parties disagree about the meaning or interpretation of a term. *Id.* (citing *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.,* 957 F.2d 196, 199 (5th Cir.1992)). An ambiguity does arise if the language of the insurance contract is subject to two or more reasonable interpretations. *Nat'l Union Fire Ins.,* 907 S.W.2d at 520. Any ambiguous provisions that arise are interpreted in favor of the insured. *Lynch Props.,* 140 F.3d at 626 (citing *Toops v. Gulf Coast Marine Inc.,* 72 F.3d 483, 486 (5th Cir. 1996)).

## IV. DISCUSSION

### A. Summary of the Summary Judgment Motions

Plaintiff moved for partial summary judgment on the liability element of her breach of contract claim only. Plaintiff's Motion at 1. Plaintiff argues that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law because the terms of the Policy "unambiguously obligate Transamerica to pay eight years of benefits under the policy to Plaintiff." *Id.* at 2. In the alternative, Plaintiff argues that the terms of the policy are ambiguous, and the terms must be interpreted in favor of her as a matter of law. *Id.*

Defendant responded to Plaintiff's motion and also moved for summary judgment. Defendant's Motion at 1. In its response, Defendant argues that (1) Plaintiff's interpretation of the Policy is unreasonable and is merely an attempt to create an ambiguity where none exists, and (2) Plaintiff's interpretation of the Policy renders key language superfluous and meaningless and fails to read the Policy as a whole. *Id.* at 7–8. In support of its motion for summary judgment, Defendant presents and requests the court adopt an interpretation of the contract that it be-

lieves is reasonable and gives effect to all of the Policy's terms. *Id.* at 9.

### B. The Insurance Policy

#### 1. The Terms as Written

The Convalescent Care Policy provides, *inter alia,* that Defendant will pay Plaintiff "the Convalescent Care Benefit for each month, during a Period of Confinement, that [the Plaintiff] requires Convalescent Care Facility Confinement."[4] Policy at 10. The Convalescent Care Benefit, as found in the Certificate Schedule ("Schedule"), is $1500 per month. *Id.* at 4. Both "Period of Confinement" and "Convalescent Care Facility Confinement" are defined in the Policy, but only the definition of Period of Confinement is relevant here.[5] Period of Confinement is defined as follows:

> The *maximum amount of time shown in the Certificate Schedule* during which benefits are payable for Convalescent Care Facility Confinements due to Sickness or Injury.
>
> A confinement which follows a previous Period of Confinement will be a continuation of the first confinement, unless the confinements are separated by 6 months or more during which the [Plaintiff] was not confined in any convalescent care facility.

*Id.* at 9 (emphasis added). Thus, a Period of Confinement as defined in the policy is only that period of time for which benefits are payable, regardless of how long the Plaintiff is actually confined in a Convalescent Care Facility.

The Schedule provides for two different "amount[s] of time." *See id.* at 4. First, the schedule lists a "Maximum Benefit Period." *Id.* Maximum Benefit Period is defined as "the maximum period of time in any Period of Confinement for which benefits can be paid." *Id.* at 8. The Schedule states that this period of time is four (4) years. *Id.* at 4. The Schedule also lists a "Lifetime Maximum Benefit Period." *Id.* at 4. The Lifetime Maximum Benefit Period is defined as "the maximum period of time for which benefits are payable for Convalescent Care Facility confinements, regardless of whether they are incurred during more than one Period of Confinement." *Id.* at 8. The Policy further provides that "[a]ll benefits payable are subject to the Lifetime Maximum Benefit Period shown in the Certificate Schedule." *Id.* at 9. The Schedule provides a method to determine the length of the Lifetime Maximum Benefit Period. In the first year after the policy is issued, the Lifetime Maximum Benefit Period equals the Maximum Benefit Period. *Id.* at 4. For each year thereafter, 10% of the Maximum Benefit Period is added to the previous Lifetime Maximum Benefit Period until the Lifetime Maximum Benefit Period equals twice the Maximum Benefit Period. *Id.* Since Plaintiff or her spouse paid the policy premiums for more than 12 years, Plaintiff's Motion app. at 50, the Lifetime Maximum Benefit Period is eight years.

---

4. All pinpoint citations to the Policy will be made to the page numbers found on the Policy itself. Since the copy of the Policy found in Defendant's Appendix at 16–31 retains the original pagination, it will be utilized instead of the copy of the Policy found in Plaintiff's Motion, app. at 19–34.

5. Convalescent Care Facility Confinement is defined as "an Insured Person's admission to a Convalescent Care Facility as an overnight bed patient." Policy at 6. A "Convalescent Care Facility" includes a "Skilled Nursing Facility," an "Intermediate Care Facility," and a "Custodial Care Facility," but does not include certain other facilities such as hospitals and rest homes. *Id.*

### 2. Interpretation and Construction of the Terms

█ Any construction of the Policy must begin with the terms of the Policy itself. Under the terms of the Policy, Defendant is generally obligated to pay Plaintiff the Convalescent Care Benefit ("Benefit") during a Period of Confinement. Policy at 10. Period of Confinement has a two-sentence definition. The first sentence defines Period of Confinement as "[t]he maximum amount of time shown in the Certificate Schedule during which benefits are payable for Convalescent Care Facility Confinements due to Sickness or Injury." *Id.* at 9. As noted above, the Schedule provides for two different "amount[s] of time," the Maximum Benefit Period and the Lifetime Maximum Benefit Period. *Id.* at 4. The Maximum Benefit Period is explicitly set out as four years in the Schedule, but the Lifetime Maximum Benefit Period is a calculated number. If the Court were only to consider the first sentence of the definition of Period of Confinement and the two time periods set out in the Schedule, two reasonable interpretations exist. The first reasonable interpretation is that the parties intended a Period of Confinement to be four years or less because the four-year time period is the only amount of time expressly "shown" in the Schedule and is thus the "maximum" amount of time. The second reasonable interpretation is that the parties intended either the Lifetime Maximum Benefit Period or Maximum Benefit Period to control the length of a Period of Confinement. Under this interpretation, whichever benefit period was longer would be the maximum length of a Period of Confinement. Having concluded that two reasonable interpretations exist, the Court would then be obligated to declare the Policy ambiguous and interpret it in favor of the insured. *See Nat'l Union Fire Ins.*, 907 S.W.2d at 520; *Lynch Props.*, 140 F.3d at 626 (citing *Toops v.*

*Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir.1996)). But the Court must consider the Policy as a whole, not in isolated sections, and must avoid interpretations that render policy language a nullity, if possible.

After considering the Policy as a whole, attempting to give effect to each term in the Policy, the Court finds that only one reasonable interpretation of the length of a Period of Confinement (and thus the length of Defendant's obligation to pay the Benefit to Plaintiff) exists: The length of a Period of Confinement is determined by the Maximum Benefit Period, which under this Policy is four years. This construction of the Policy is the only reasonable construction for several reasons. First, the definition of Maximum Benefit Period removes any ambiguity as to whether the Maximum Benefit Period or the Lifetime Maximum Benefit Period controls the length of a Period of Confinement. Maximum Benefit Period is defined as "the maximum period of time in any Period of Confinement for which benefits can be paid." Policy at 8. The Policy explicitly sets out this "period of time" in the Schedule: four years. *Id.* at 4. Therefore, reading the two provisions together, four years is the maximum period of time in any Period of Confinement for which benefits can be paid to Plaintiff. Returning to the first sentence of the definition of Period of Confinement, the "maximum amount of time" in that sentence clearly, though inartfully, refers to the Maximum Benefit Period, not the Lifetime Maximum Benefit Period.

Second, the definition of Lifetime Maximum Benefit Period further demonstrates why the definition of Period of Confinement does not refer to the Lifetime Maximum Benefit Period. Lifetime Maximum Benefit Period is defined as "the maximum period of time for which benefits are pay-

able for Convalescent Care Facility confinements, regardless of whether they are incurred during more than one Period of Confinement." *Id.* at 8. Two things are immediately apparent from this definition: (1) Period of Confinement and confinement do not have the same meaning, and (2) multiple Periods of Confinement may be covered by the Policy. As noted above, a Period of Confinement is meant to delineate the period of time for which Benefits are payable. A confinement, though, is meant to describe the period of time during which the Plaintiff is "an overnight bed patient." *See id.* at 6. It follows from this that Plaintiff may be an overnight bed patient for a longer or shorter period of time than the maximum period of time for which Benefits are payable (i.e., the Period of Confinement). Since a confinement may be shorter than a Period of Confinement, the Policy, in the second sentence of the definition of Period of Confinement, provides that multiple confinements may make up a single Period of Confinement: "A confinement which follows a previous Period of Confinement will be a continuation of the first confinement, unless the confinements are separated by 6 months or more during which the [Plaintiff] was not confined in any convalescent care facility." *Id.* at 9. Thus, a confinement following a previous confinement will be considered a part of the same Period of Confinement unless the confinements are separated by six months or more. And, as mentioned above, the definition of Lifetime Maximum Benefit Period suggests that multiple Periods of Confinement may be covered. If *multiple* Periods of Confinement may be covered under the Lifetime Maximum Benefit Period, how could the maximum length of a *single* Period of Confinement be determined by the Lifetime Maximum Benefit Period? Recognizing that the maximum length of a Period of Confinement is the length of the Maxi-

mum Benefit Period avoids this awkward result that that drafter of the Policy clearly did not intend.

Third, a construction that equates the maximum length of a Period of Confinement to the length of the Lifetime Maximum Benefit Period not only renders the definition of Maximum Benefit Period meaningless, but it also disregards the scheme of coverage the drafter of the Policy intended. The coverage provided to Plaintiff by the Policy was clearly not intended to be of a single duration. The Policy provides for Benefits to be paid during a Period of Confinement, and under the construction of the Policy the court adopts by this Order, a Period of Confinement does not exceed the Maximum Benefit Period. The second sentence of the definition of Period of Confinement provides for multiple Periods of Confinement; thus, by extension, the Policy provides for payments during multiple Periods of Confinement. The Policy, though, limits the Defendant's ultimate obligation to Plaintiff for successive Periods of Confinement by providing that "[a]ll benefits payable are subject to the Lifetime Maximum Benefit Period." The overall effect of this scheme is to provide coverage during multiple Periods of Confinement not to exceed the length of the Lifetime Maximum Benefit Period. If the Court were to adopt a construction of the Policy where the length of a Period of Confinement could be the length of the Lifetime Maximum Benefit Period, Plaintiff could exhaust her benefits during a single Period of Confinement.

Therefore, as there is only one reasonable interpretation, the Court finds the terms of the Policy unambiguous. The parties unambiguously intended that the Defendant only be obligated to pay Plaintiff the Convalescent Care Benefit during a Period of Confinement. A Period of Confinement cannot exceed the Maximum

Benefit Period, which is four years under this Policy. Confinements that are not separated by a six month or greater period of time are to be considered a single Period of Confinement. Regardless of the number or length of Periods of Confinement, the Defendant is not obligated to pay Plaintiff the Benefit for longer than the Lifetime Maximum Benefit Period.

## C. The Summary Judgment Motions

### 1. Plaintiff's Motion

█ Plaintiff moved for partial summary judgment on its breach of contract claim on the issue of the liability of Defendant only. Plaintiff's Motion at 1. To prevail on a breach of contract claim under Texas law, Plaintiff must prove "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Pegram v. Honeywell,* 361 F.3d 272, 288 (5th Cir.2004) (citing *Runge v. Raytheon E–Systems, Inc.,* 57 S.W.3d 562, 565 (Tex. App.—Waco 2001, no pet.)). Since Plaintiff moved for summary judgment only on the issue of liability, Plaintiff needs to show that there is no genuine issue as to any material fact as to the first three elements of her breach of contract claim and that she is therefore entitled to judgment as a matter of law on all three ele-

ments. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff has failed to demonstrate that she is entitled to judgment as a matter of law since she has failed to prove that the defendant breached the terms of the Policy. The Court concluded above that the Policy only obligates Defendant to pay the Benefit to Plaintiff for a maximum of four years (48 months) during a single Period of Confinement. Plaintiff's current confinement is a single Period of Confinement that began on September 16, 2001, and Defendant paid 48 months of Benefits to Plaintiff during this Period of Confinement. Defendant has fulfilled its obligations under the Policy and is therefore not in breach. Plaintiff's motion for partial summary judgment is therefore DENIED.

### 2. Defendant's Motion

The Defendant moved for summary judgment on "Plaintiff's claims." Defendant's Motion at 10. It did not expressly identify which of Plaintiff's four claims it is moving for summary judgment on. *See id.* at 10. As almost of all of Defendant's Motion is devoted to negating Plaintiff's breach of insurance contract claim, Defendant's motion for summary judgment will be treated as a motion for partial summary judgment on Plaintiff's breach of contract claim only.[6] Accordingly, Plaintiff's re-

---

6. Alternatively, if the Court were to view Defendant's Motion as requesting summary judgment on all of Plaintiff's claims, the Court would find that Defendant has failed to meet its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to the fraud, Insurance Code and DTPA claims. *See* Fed.R.Civ.P. 56(c). The summary judgment record before the Court demonstrates a genuine issue of material fact as to whether Ronald Benson, the insurance agent that sold the Policy to Mr. Polete, represented to Mr. Polete that the Policy would provide coverage

for a maximum period of eight years for a single Period of Confinement. The affidavit of Mr. Polete provides that Mr. Benson made such a representation, Plaintiff's Motion app. at 16, while the affidavit of Mr. Benson provides that he did not make such a representation, Defendant's Appendix at 41–42. These opposing affidavits show that there is a genuine issue of material fact as to whether Mr. Benson made the relevant representation to Mr. Polete, and therefore Defendant is not entitled to judgment as a matter of law on Plaintiff's fraud, DTPA and Insurance Code claims.

maining claims of fraud, DTPA violations and Texas Insurance Code violations will neither be addressed nor affected by this Order.

The Defendant is moving for summary judgment on a claim on which it does not have the burden of proof at trial. Thus, to be entitled to judgment as a matter of law, Defendant need only show that there is no genuine issue as to any material fact concerning any essential element of Plaintiff's breach of contract claim. Defendant has shown that it is entitled to judgment as a matter of law on this claim because there is no genuine issue of material fact as to whether Defendant breached the contract. As noted above, the Policy only obligates Defendant to pay the Benefit to Plaintiff for a maximum of four years (48 months) during a single Period of Confinement. Plaintiff's current confinement is a single Period of Confinement that began on September 16, 2001, and Defendant paid 48 months of Benefits to Plaintiff during this Period of Confinement. Defendant has fulfilled its obligations under the Policy and is therefore not in breach. Defendant's motion for summary judgment on Plaintiff's breach of contract claim is therefore GRANTED. To the extent that Defendant's motion could be construed to encompass Plaintiff's fraud, DTPA and Insurance Code claims, the motion is DENIED as to those claims.

## V. CONCLUSION

IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment on her breach of insurance contract claim is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment is GRANTED as to Plaintiff's breach of insurance contract claim and is DENIED as to Plaintiff's remaining claims.