# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2013

No. 12-60148
Summary Calendar

Lyle W. Cayce
Clerk

STATE NATIONAL INSURANCE COMPANY,

Plaintiff-Appellee

v.

MARKETING SERVICES INCORPORATED; WHITE GOLD
COMMODITIES, INCORPORATED,

Defendants-Appellants

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:10-CV-62

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This is an appeal from a declaratory-judgment action involving an insurance-coverage dispute. Plaintiff-Appellee, State National Insurance Co. ("State National"), filed a declaratory action seeking a judgment declaring that State National had no coverage on the claim of the subject insurance policy with Defendants-Appellants, Marketing Services, Inc. ("Marketing Services") and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60148

White Gold Commodities, Inc. ("White Gold Commodities"). Finding that the language of the subject policy exclusion clearly and unambiguously excluded coverage, the district court granted State National's motion for summary judgment. We AFFIRM.

## I. FACTS AND PROCEEDINGS

In August 2008, State National issued an insurance policy to Defendants-Appellants. Paragraph 8A of the policy provides:

> In no case shall this insurance cover any loss, damage or expense as a result of: . . . [m]isappropriation, concealment, conversion, infidelity and/or dishonest act(s) committed by or at the instigation of the Assured, their employees or appointed agents. This exclusion shall not apply to carriers for hire or loss of and/or theft of documents of title by reason of the actions of any third party obtaining possession of the insured goods by fraud, malice and/or dishonest act.

In 2003, Marketing Services entered into an agency agreement with Tang Zhong Qing ("Tang"). Effectively, Tang would clear the cotton through customs in China and see that it was stored in the warehouse operated by Nan Kong Development Company ("NKD"). According to Defendants-Appellants, Tang would later seek buyers for the cotton and carry out sales only with the express authorization of the Defendants-Appellants.

In December 2008, Marketing Services purchased blocks of cotton, hedging the cotton under Marketing Services's name. Once the hedging was in place, the cotton was booked in White Gold Commodities's name. White Gold Commodities then invoiced the cotton to White Gold Commodities's China office, which Tang managed.

In June 2009, Tang executed a "Purchase Confirmed" document, which evidenced the sale of cotton from White Gold Commodities to Jiangyin Jutai Textiles Co. Tang signed the document and stamped it with the "Official Stamp White Gold Commodities, Inc. China Office." In September 2009, Marketing

No. 12-60148

Services submitted a notice under the subject policy, asserting that the cotton was presumed stolen. Defendants-Appellants alleged that Tang had colluded with the owner of the storage warehouse and sold 880 bales of cotton at a fraction of the price and without express permission. In response, State National informed Defendants-Appellants that coverage would be denied per the exclusion in paragraph 8A of the policy and the involvement of Tang, their agent, who arranged for the unauthorized sale of the cotton. State National sought a judgment declaring that the loss of the 880 bales of cotton was excluded from coverage per paragraph 8A of the policy. Finding that Tang was the Defendants-Appellants' admitted agent, the district court held that the exclusion in paragraph 8A applied and granted summary judgment in favor of State National. The district court further held that the exception to the exclusion did not apply because the defendants did not show that "carriers for hire" or "loss of and/or theft of documents of title" were involved in the matter. Defendants-Appellants appealed.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 528 (5th Cir. 2011). Summary judgment is warranted if the record shows that "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmoving party. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). However, conclusory and unsubstantiated allegations alone are insufficient to defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, we review the district court's

No. 12-60148

interpretation of an insurance contract *de novo. Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001).

## B.  Exception to the Exclusion in Paragraph 8A

We conclude that summary judgment was appropriate based on our review fo the policy language.  The exception to the exclusion provides that it "shall not apply to carriers for hire or loss of and/or theft of documents of title by reason of the actions of any third party obtaining possession of the insured goods by fraud, malice and/or dishonest act."  The Defendants-Appellants have failed to prove that a "carrier for hire" or a "loss of and/or theft of documents of title" was involved, thus the exception to the exclusion is not applicable to the present facts.

First, Defendants-Appellants argue that the exception to the exclusion applies because the warehouse where the cotton was being stored could be considered a "carrier for hire," a term that the insurance policy does not define. Without citing any authority, Defendants-Appellants claim to rely on the affidavit of their expert for this classification of the warehouse.  Relying on a former version of the Carriage of Goods by Sea Act ("COSGA"), the Fifth Circuit has considered a "carrier" to include "the owner or the charterer who enters into a contract of carriage with a shipper." *QT Trading, L.P. v. M/V SAGA MORUS*, 641 F.3d 105, 109 (5th Cir. 2011) (internal quotation marks omitted).  Currently, COSGA defines "carrier" as "the owner, manager, charterer, agent, or master of a vessel."  46 U.S.C § 30701.  Under both the former and the current definition, the warehouse where the cotton was stored cannot be classified as a "carrier" pursuant to the exception to the exclusion in paragraph 8A.

Second, Defendants-Appellants argue that the exception to the exclusion should apply because there has been a "theft of documents of title."  Defendants-Appellants contend that Tang, their agent, never received title to the cotton and thus could not have validly transferred title.  Tang, however, received the

original bill of lading from Defendants-Appellants, which was more than what is routinely required to permit him to have cleared the cotton through customs. We have stated that bills of lading may serve multiple functions, including serving as document of title. *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 702 (5th Cir. 2003). Therefore, given that Tang received the original bill of lading, Defendants-Appellants knowingly delivered title of the cotton to Tang, their agent. No theft of title occurred because the document of title was intentionally given to him. Here, Tang lawfully received title to the goods, thus allowing him to transfer title of the cotton to the purchaser. Though Tang, as agent, may have breached a duty to his principal, this breach is excluded from coverage under the first sentence of paragraph 8A, rather than the exception to the exclusion. Given that no documents of title were lost or stolen, the exception to the exclusion is inapplicable to the current facts.

Third, Defendants-Appellants assert that the exception to the exclusion is ambiguous and "very difficult to understand." They argue that the portion of the exception to the exclusion that includes "documents of title that are lost and/or stolen" should be interpreted to include "fraudulently manufactured" documents of title. We disagree. This interpretation is unavailable under the rules governing the interpretation of insurance contracts under Mississippi law. We have explained that the first rule for interpreting insurance contracts in Mississippi as follows: "[f]irst, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998). "[U]nless an affirmative expression of an overriding public policy by the legislature or judiciary allows us to reach a different result," we have held that "in Mississippi, an insurance policy's plain meaning controls." *Id.* at n.11. Because we conclude that the exception to the exclusion is plain and unambiguous, under Mississippi law, plain meaning must govern its

interpretation. Assigning plain meaning to "carrier for hire" and "loss and/or theft of the documents of title," the allegedly "illegally and fraudulently manufactured" Purchase Confirmation executed by Tang is not provided for under the plain language of the exception to the exclusion. Accordingly, the district court did not err when it held that paragraph 8A plainly and unambiguously excluded coverage. Thus, viewing the evidence in the light most favorable to Defendants-Appellants, we conclude that summary judgment was appropriately granted

## III. CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.