# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2021

Lyle W. Cayce
Clerk

No. 20-20307

Playa Vista Conroe, a Condominium Association,

*Plaintiff—Appellee*,

*versus*

Insurance Company of the West, (ICW),

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2855

Before Higginbotham, Costa, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

A Texas condo association suffered property damage during Hurricane Harvey. It filed a property-damage claim against its insurer. The insurer refused to pay, so the condo association filed suit for breach of its insurance contracts. On cross-motions for summary judgment, the district court held the insurer liable. We affirm.

I.

Playa Vista Conroe is a condominium association located outside of Houston, Texas. Its property sits on the north shore of Lake Conroe, a

No. 20-20307

manmade lake on the San Jacinto River. Prior to Hurricane Harvey, that property included a dock with 22 boat slips. In May 2017, Playa Vista insured the dock and boat slips by purchasing insurance from Insurance Company of the West ("ICW"). Three policy documents are key to the parties' dispute:

- A "difference in conditions form": This document is 23 pages long and provides the framework for the parties' insurance agreement. We refer to the difference in conditions form as the "DICF."

- A "limited coverage—flood endorsement": This document is 1.5 pages long, and it replaces the background flood provisions in the DICF. We refer to the flood endorsement as the "FE."

- A "specified flood exclusion": This document is 0.5 pages long, and it adds an additional site-specific flood exclusion for "BOAT SLIPS/DOCKS." We refer to the boat slip exclusion as "BSE."

We refer to the DICF, FE, and BSE together as the "Policy."

In August 2017, Hurricane Harvey hit the State of Texas. The storm caused unprecedented rainfall and flooding. In order to prevent the Lake Conroe Dam from overflowing and failing, the San Jacinto River Authority released from the dam 79,141 cubic feet of water per second—nearly the flow rate of Niagara Falls. Playa Vista's boat slips were completely destroyed.

Those 22 destroyed boat slips are the only property at issue here. Playa Vista sought compensation for them based on its Policy. It filed a notice of loss with ICW, describing the loss as "[d]estruction of various components of the condominium property from severe weather, including complete destruction of [the] boat dock, damage to condominium buildings, damage to garages, bulkhead damage, fencing damage, landscaping damage, pool damage, awning damage, and other miscellaneous damage." ICW initially

sent a reservation-of-rights letter. Then it denied coverage. ICW stated that the damage "appear[ed] to be the result of Hurricane/Tropical Storm Harvey," and that Playa Vista's "policy d[id] not cover flooding caused by a hurricane or tropical storm."

Playa Vista filed a notice and pre-litigation demand under Chapter 542A of the Texas Insurance Code. The notice claimed that Playa Vista "suffered immediate and severe damage to [its] commercial property as a result of an intense storm" and alleged ICW "improperly adjusted [Playa Vista's] claim so that [it] would not receive the coverage [it] had originally contracted to receive." Playa Vista attached a report estimating $208,117.44 in damages and listing "hurricane" as the type of loss. ICW responded by reiterating its denial of Playa Vista's claim.

Playa Vista filed suit in Texas state court. It raised several claims under state law, but only its breach-of-contract claim is relevant to this appeal. ICW removed the case to federal court. Then the parties cross-moved for summary judgment.

The district court denied ICW's motion and granted Playa Vista's motion. That order resolved Playa Vista's breach-of-contract claim, but it left damages and attorney's fees as issues for trial. Two weeks before the trial date, the parties submitted a joint agreed stipulation (the "Stipulation") in which they stipulated that Playa Vista incurred $190,827.50 in damages and $50,000.00 in attorney's fees. The district court approved and entered the Stipulation.

Playa Vista moved for entry of final judgment, *see* FED. R. CIV. P. 58(d), noting that "the only remaining issue . . . was the determination of the amount of damages which Playa Vista [wa]s entitled to under its breach of contract claim." The district court issued a final judgment awarding Playa Vista damages and attorney's fees pursuant to the Stipulation. The next day,

No. 20-20307

ICW filed a motion for leave to file a second motion for summary judgment. ICW claimed that by agreeing to the Stipulation, Playa Vista admitted that the loss fell within the Policy's exclusion for "[a]cts or decisions, including the failure to act or decide, of any person, organization or governmental body." Playa Vista did not respond. ICW then filed a motion to alter, amend, or reconsider the final judgment. Playa Vista objected, and the district court denied the motion. ICW appealed.

## II.

We begin with the district court's summary-judgment order. "Where, as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, LLC*, 620 F.3d 558, 562 (5th Cir. 2010). Our review of the district court's application of this standard is *de novo*. *See id.* at 561–62.

Our review of the Policy language and the legal standards for insurance coverage also is *de novo*. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). As to the Policy language, we use Texas's contract-interpretation rules. *See ibid.* As to the legal standards for insurance coverage, Texas law provides:

> Initially, the insured has the burden of establishing coverage under the terms of the policy. If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citations omitted). We hold Playa Vista established coverage, and ICW failed to prove an exclusion applies.

A.

We start with the coverage question. The DICF states that ICW "will pay for accidental direct physical loss or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." It defines a "Covered Cause of Loss" as a "direct physical loss" that is not "excluded in Section[] C. . . . or [Section] D. . . . or excluded or limited in the Declarations or by endorsement." And Section C's "Property Excluded" provision states that ICW "will not pay for loss or damage to . . . docks" unless "a stated value is shown in Section E. . . . and/or a sub-limit of insurance is shown in Section A.1.a . . . in the Declarations or in an endorsement to this policy." Section A.1.a in the Declarations in turn includes a $220,000 "sublimit of insurance" for coverage of boat slips. Therefore, Playa Vista met its burden to show that its boat slips are covered in the absence of an applicable exclusion.

B.

The burden thus shifts to ICW to prove that an exclusion applies. ICW points to three potential exclusions and insists that the language of the exclusions is sufficient standing alone to warrant judgment as a matter of law in its favor. That is wrong.

First, the DICF generally excludes losses arising from a "flood" and specifically excludes "damage resulting from waterborne material involved in the flood." But that same exclusion says: "if flood coverage is endorsed to and made part of this policy, we will way [sic] pay for loss subject to the limited coverage provided by that endorsement." Playa Vista did in fact purchase separate flood coverage—the FE—so the flood provisions in the DICF are irrelevant.

That is particularly true because the FE contains its own list of exclusions, several of which replicate the exclusions in the DICF. For example, the DICF excludes flood damage caused by "Underground waters

rising" and "Tsunami or tidal wave," and the FE likewise excludes flood damage caused by "Underground waters rising" and "Tsunami or tidal wave." This proves that ICW (as the drafter of the Policy documents) intended the coverage and exclusion provisions of the FE to replace those in the DICF. *See Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003) (stating that "a court construing a contract must strive to give effect to the written expression of the parties' intent by reading all parts of a contract together" and an ambiguous insurance contract "will be interpreted in the manner that most favors coverage" (quotation omitted)); *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) (applying the *expressio unius* canon to the interpretation of a contract). The DICF flood exclusion therefore is irrelevant.

Second, the FE provides: "We will not pay for loss or damage caused by 'flood', arising from . . . [a h]urricane or tropical storm." The FE further defines a "flood" as "a general and temporary condition of partial or complete inundation of 2 or more acres of normally dry land areas or of 2 or more distinct parcels of land (at least one of which is your property) with water." It is undisputed that the FE's definition of "flood" does not apply to Playa Vista's boat slips; they obviously existed on water, not two or more acres of normally dry land. Because the FE only applies to normally dry land, it too is irrelevant.*

---

* ICW's contrary argument is absurd. It argues that the FE *covers* "floods" only as "specifically defined" in the FE, Blue Br. 5—that is, "a general and temporary condition of partial or complete inundation of 2 or more acres of normally dry land areas or of 2 or more distinct parcels of land (at least one of which is your property) with water." But then it argues the FE *excludes* "floods" "as commonly understood (i.e. not defined), caused by [a h]urricane or tropical storm." Blue Br. 5–6 (quotation marks omitted). The FE says no such thing. It includes only one definition of "flood," and it applies equally to the FE's coverage provision and the FE's exclusion provision.

Third, the Policy also expressly excludes "flood" damage to boat slips and docks. This is the BSE. But the BSE suffers from the same problem as the second exclusion—it only applies to a "flood." It is unclear why ICW drafted its BSE to exclude "flood" damage to property that normally appears on water rather than dry land. But it was ICW's Policy to draft, so ICW must assume the perils of its chosen language. *See Ryan*, 274 F.3d at 323 ("Ambiguous insurance contracts will be interpreted against the insurer. The policy of strict construction against the insurer is especially strong when the court is dealing with exceptions and words of limitation." (quotations omitted)); *Goswick v. Emps.' Cas. Co.*, 440 S.W.2d 287, 289 (Tex. 1969) ("[W]e must presume that the objective of the insurance contract is to insure, and we should not construe the policy to defeat that objective unless the language requires it.").

But even if the FE or the BSE "flood" provisions could in theory apply, Playa Vista submitted competent summary-judgment evidence to show that its boat slips were not in fact destroyed by a "flood." In particular, Playa Vista's president Robert G. Copes testified by affidavit. *See* FED. R. CIV. P. 56(c)(1)(A) (listing affidavits as competent summary-judgment evidence). Copes testified that he personally observed the boat slips at 10:00 pm on the night before the San Jacinto River Authority "released the water from Lake Conroe Dam, and neither the dock nor any of the Boat Slips were damaged or destroyed at that time." When the River Authority released water from the dam, however, it:

> created a suction effect, like a sink drain that is unplugged, but on a much greater scale. Because of the rate at which water was being released, the water on the north side of [the] lake (where the Boat Slips are located) was below normal levels afterwards, despite the rainfall brought by Harvey.

According to Copes, this super-powerful suction effect pulled debris from all over Lake Conroe, violently whipped it around the Lake, and destroyed Playa Vista's boat slips as the water drained southward out of the Lake. Thus, Copes testified, it was this "suction effect" and the *drop* of water levels—not an "inundation" or "flood" or *rise* of water levels—that destroyed Playa Vista's boat slips.

ICW chose not to dispute the Copes affidavit. Of course, Rule 56 did not obligate ICW to submit its own affidavit(s); it could simply "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56). But in the face of an affidavit tending to establish that the boat slips were not destroyed by a "flood," ICW could not carry its legal burden to prove one of the "flood" exclusions by submitting nothing. That is particularly true where the Policy exclusions on their face do not apply to the loss of Playa Vista's boat slips. The district court did not err in granting summary judgment to Playa Vista.

## III.

Finally, ICW makes two efforts to undo its litigation mistakes. Neither has merit.

ICW first argues that it creatively drafted its insurance contracts to avoid any burden to prove anything. As noted above, Texas law establishes a burden-shifting framework under which the insured must establish coverage, but then the *insurer* must prove an applicable exception. *See Gilbert*, 327 S.W.3d at 124. ICW says it anticipated this problem and drafted the DICF coverage provision to include an exclusionary clause—with the hope that its customers would get stuck with the burden of proving *both* coverage *and* the absence of an exclusion. We doubt that insurers can avoid Texas law so easily. It would be odd that insurers carry the burden to establish exclusions only

when the contract separates them from the coverage provisions and not when the coverage and exclusion provisions appear in the same contractual section. It would be particularly odd for that result to obtain when the insurer is the one who writes the contract. And it would be odder still for that result to obtain when ICW can point to no state-law authority for it.

But the issue is irrelevant here because ICW conceded in the district court that Playa Vista's boat slips are covered by the DICF coverage provision. ICW cannot take the opposite position now. *See Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam).

Second, ICW says it snatched victory from the jaws of defeat by negotiating the Stipulation after losing at summary judgment. After the district court ruled in Playa Vista's favor at summary judgment, the only issue remaining for the district court was Playa Vista's request for damages and fees. The district court set those damages and fees for trial. But before trial, the parties submitted this Stipulation to obviate further proceedings:

> 1. The parties stipulate that [Playa Vista's] docks and boat slips were damaged from the San Jacinto River Authority's release of water from the Lake Conroe Dam at an unprecedented rate and volume, creating a suction effect that unmoored boats, causing these unmoored boats, fallen trees, and other debris to collide into the Plaintiff's docks and boat slips.

> 2. The parties stipulate [that Playa Vista's] property damaged as a result of the claim [is] valued at $190,827.50 and further stipulate that the recoverable attorney's fees are $50,000.00.

The district court approved the Stipulation and then issued a final judgment.

ICW says this Stipulation operates as a legal "gotcha," and that by agreeing to it, Playa Vista gave away its summary-judgment victory. After the district court entered final judgment, ICW argued that Playa Vista stipulated that its losses were caused by the decision of a governmental body—namely,

the San Jacinto River Authority—and hence triggered a theretofore unmentioned exclusion for "[a]cts or decisions, including the failure to act or decide, of any person, organization or governmental body." That is far too little too late. If ICW wanted to rely on the governmental-body exclusion, it was obligated to raise it (at the latest) at summary judgment. *See, e.g.*, *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010).

AFFIRMED.