# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2021

Lyle W. Cayce
Clerk

No. 21-10493

Bartolomeo USA, L.L.C.,

*Plaintiff—Appellant*,

*versus*

United States Department of Housing and Urban Development; Marcia Fudge, Secretary, U.S. Department of Housing and Urban Development,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:19-CV-1020

Before Barksdale, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

The question presented is whether the U.S. Department of Housing and Urban Development properly foreclosed on a loan. The district court said yes and granted summary judgment to the Government. We affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10493

## I.

In 2009, Gloria Carter took out a reverse mortgage (also called a Home Equity Conversion Mortgage or "HECM") in Fort Worth, Texas. She took out the HECM under a program run by the U.S. Department of Housing and Urban Development ("HUD"). It is called a reverse mortgage "because the borrower is not required to make monthly or other periodic payments to repay the loan" unlike a traditional mortgage. *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195–96 (5th Cir. 2016); *see also* 12 U.S.C. § 1715z-20(b)(3). "Instead, the loan balance increases over time and does not become due and payable until one of a number of specified events occurs." *Johnson*, 830 F.3d at 196; *see also* 12 U.S.C. § 1715z-20(j). The lender may only recover the borrower's house or its sale value. 12 U.S.C. § 1715z-20(d)(7).

Under the program, HUD "insures reverse mortgages originated by private lenders." *Johnson*, 830 F.3d at 196 n.2. This means that HUD provides the borrower any funds that the private lender is obligated to pay but for some reason does not. 12 U.S.C. § 1715z-20(i); 24 C.F.R. §§ 206.117, 206.121(a). To implement this program, the parties agree that in general two deeds of trust are issued and recorded reflecting two mortgages. *See, e.g.*, 24 C.F.R. §§ 206.27, 206.117, 206.121. The private lender originates the loan through a First Note and secures that note in a First Deed of Trust (the first mortgage). 12 U.S.C. § 1715z-20. The borrower executes a Second Note and secures that note in a Second Deed of Trust (the second mortgage). *See, e.g.*, 24 C.F.R. §§ 206.27(d), 206.121(c). The second mortgage becomes relevant if HUD makes payments instead of the private lender. *Id.* § 206.121(c). To protect the private lender, the HECM program lets the lender transfer the First Note and First Deed of Trust to HUD before repayment from the borrower but only when the borrower's indebtedness reaches 98% of the maximum loan. *Id.* §§ 206.107(a), 206.123(a).

Here, there are two deeds of trust, and both of them were timely recorded. There is no dispute that at the time of recording the deeds were valid. By July 2014, Carter's indebtedness reached 98% of the maximum loan, and the private lender transferred the lien in the First Deed of Trust to HUD. HUD therefore owned both deeds of trust. But because the private lender paid all the funds for the loan, HUD never made any payments to Carter. This meant that repayment by Carter was only necessary under the first mortgage involving the First Deed of Trust—not the second mortgage involving the Second Deed of Trust. In 2016, the required preconditions occurred making the loan due.

On January 3, 2018, HUD's limited power of attorney recorded a "Release of Lien" (or "Release") for the Second Deed of Trust. There is no dispute that the Release is valid. The Release is two pages: The first page has definitions; the second page has the operative language. Put together, the Release states:

> Holder of Note and Lien [HUD] acknowledges payment in full of the Original Note [note described in Deed of Trust, recorded in Instrument Number D209166845, 06/23/2009, Real Property Records of Tarrant County, TX], releases the Property from the Lien [Lien described in Deed of Trust, recorded in Instrument Number D209166845, 06/23/2009, Real Property Records of Tarrant County, TX] and expressly waives and releases all present and future rights to establish or enforce the Lien as a security for payment of any future advance or other indebtedness.

The Deed of Trust recorded in Instrument Number D209166845 is the *Second* Deed of Trust; the First Deed of Trust has a different number.

In March 2019, Carter sold the house to RMDC, LLC. On April 11, HUD filed a notice with the relevant county clerk that a foreclosure sale would occur on May 7; the notice was posted at the relevant courthouse. On

April 16, among other days, HUD published notice in the county's commercial record. Also on April 16, Bartolomeo USA, LLC ("Bartolomeo") purported to purchase the property. It also made about $80,000 worth of improvements to the property. The foreclosure sale occurred on May 7, and HUD bought the property back on May 14.

Soon after, Bartolomeo sued HUD and sought equitable relief. The district court granted summary judgment to HUD. Bartolomeo timely appealed. Our review is de novo. *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 414 (5th Cir. 2021).

## II.

Applying Texas law, the district court made three relevant determinations. First, the court determined that the Release only extinguished the Second Deed of Trust, so HUD properly foreclosed on the property under the First Deed of Trust. Specifically, the court concluded that the relevant language released a specific *lien*, not a particular *loan*. It emphasized that the Release expressly names the "Lien described in Deed of Trust, recorded in Instrument Number D209166845"—the Second Deed of Trust—and does not mention the First Deed of Trust. Because "[e]ach note was made out to [a] separate lender, and each lender had a separately recorded lien," continued the court, the "obligations and duties are separate." So the Release, by invoking only the Second Deed of Trust, "did not affect the First Deed of Trust."

Second, the court determined that Bartolomeo was neither a good-faith purchaser nor a good-faith improver. That is because, the court explained, Bartolomeo was on constructive notice of the properly recorded First Deed of Trust and thus had constructive knowledge of HUD's superior right to the property.

No. 21-10493

Third, the court determined that 28 U.S.C. § 2410 did not apply because HUD had title to the property and not just a security interest. The court thus granted HUD summary judgment and dismissed all of Bartolomeo's claims with prejudice.

We see no reversible error in the district court's determinations. One issue, however, warrants brief discussion.

The district court dismissed Bartolomeo's claim under 28 U.S.C. § 2410 with prejudice. This was so even though the court referred to "subject matter jurisdiction." That might give the reader pause because dismissals for lack of jurisdiction are generally *without* prejudice. *See, e.g.*, *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021).

We hold the district court correctly dismissed the § 2410 claim with prejudice. Section 2410 creates a right of action and waives sovereign immunity. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 n.4 (2005) ("Federal law does provide a quiet title cause of action against the Federal Government. 28 U.S.C. § 2410."); *Lewis v. Hunt*, 492 F.3d 565, 571 (5th Cir. 2007) ("Under 28 U.S.C. § 2410, Congress has waived the government's sovereign immunity to a limited class of civil actions . . . ."); *cf.* Caleb Nelson, *"Standing" and Remedial Rights in Administrative Law*, 105 Va. L. Rev. 703, 705 n.2 (2019) (acknowledging that today the terms "cause of action" and "right of action" are interchangeable but also explaining how the terms were not always considered the same). As a result, the jurisdictional question here (whether the United States waived sovereign immunity) is identical to a merits question (whether Bartolomeo has a right of action under § 2410). So, in these circumstances, it was appropriate for the district court to dismiss Bartolomeo's § 2410 claim with prejudice. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021) ("But where, as here, pleading a claim and pleading

5

jurisdiction entirely overlap, a ruling that the court lacks subject-matter jurisdiction may simultaneously be a judgment on the merits."); *id.* at 749 n.8 ("In cases such as this one where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both.").

\*   \*   \*

We have considered Bartolomeo's other arguments and find them unpersuasive. For the foregoing reasons, and for substantially the same reasons given in the district court's thorough opinion, we refuse to disturb the judgment.

AFFIRMED.